# EXHIBIT A

Code Name: **"NYPE 93"**

Recommended by:
The Baltic and International Maritime Council (BIMCO)
The Federation of National Associations of
Ship Brokers and Agents (FONASBA)

# TIME CHARTER©
New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U. S.A.), Inc.*

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946;
Revised June 12th, 1981; September 14th 1993.

1  **THIS CHARTER PARTY**, made and concluded in London
2  This           day of

3  Between
4
5  Owners of the Vessel described below, and **Eko Shipping Ltd., British Virgin Islands or their nominee**
6
7
8  Charterers

9  **Description of Vessel**

10  Name            Flag **Malta**          Built **12/1979**             (year).
11  Port and number of Registry **Valletta**
12  Classed **Lloyd's+100 A1**                 in
13  Deadweight **14597** long*/metric* tons (cargo and bunkers, including freshwater and
14  stores not exceeding    long*/metric* tons) on a salt water draft of **10.00 metres**
15  on summer freeboard.

16  Capacity  **19.338**   cubic feet *metres* grain  **17.425**  cubic feet *metres* bale space
17  Tonnage  **11477 / 6076**  GT/GRT
18  Speed about   **14**     knots, fully laden, in good weather conditions up to and including maximum
19  Force  **4**  on the Beaufort wind scale, on a consumption of about    **21.5**   long*/metric*
20  tons of

21  *Delete as appropriate.
22  * For further description see Appendix "A" (if applicable)

23  **1. Duration**

24  The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period
25  **of 35/45 days without guarantee plus/minus 15 days**
26
27
28                                                          within below mentioned trading limits.

29  **2. Delivery**

30  The Vessel shall be placed at the disposal of the Charterers at **arrival pilot station      , any time day**
31  **or night, Sundays and Holidays included**
32
33                                                          The Vessel on her delivery
34  shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted
35  for ordinary cargo service, having water ballast and with sufficient power to operate all cargo-handling gear
36  simultaneously.

37  The Owners shall give the Charterers  not less than  **notice on fixing**  days notice of expected date of
38  delivery.

39  **3. On-Off Hire Survey**   *See Clause 48.*

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

40 ~~Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their~~
41 ~~respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct~~
42 ~~joint on-hire/off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition~~
43 ~~of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without~~
44 ~~prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree.~~
45 ~~If either party fails to have a representative attend the survey and sign the joint survey report, such party~~
46 ~~shall nevertheless be bound for all purposes by the findings in any report prepared by the other party.~~
47 ~~On-hire survey shall be on Charterers' time and off-hire survey on Owners' time.~~

48 **4. Dangerous Cargo/Cargo Exclusions**  *See Clause 85*

49 (a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of dangerous,
50 injurious, flammable of corrosive mature unless carried in accordance with the requirements or
51 recommendations of the competent authorities of the country of the Vessel's registry and of ports of
52 shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must
53 pass. Without prejudice to the generality of the foregoing, in addition the following are specifically
54 excluded: livestock of any description, nuclear and radioactive materials,

65 ~~(b) If IMO classified cargo is agreed to be carried, the amount of such cargo shall be limited to~~
66 ~~tons and the Charterers shall provide the Master with any evidence he may~~
67 ~~reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO~~
68 ~~regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at~~
69 ~~the Charterers' risk and expense.~~

70 **5. Trading Limits**

71 The Vessel shall be employed in such lawful trades between safe ports and safe places *in / out of geo*
72 *rotation always afloat always accessible*
73 within *Institute Warranty Limits with bulk/steels/generals, vehicles*                                         excluding
74
75
76                                                                                                    as the Charterers shall direct.

77 **6. Owners to Provide**

78 The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for
79 all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for
80 wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the
81 crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and
82 equipment for and during the service, and have a full complement of officers and crew.

83 **7. Charterers to Provide**

84 The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S.A.). Inc., using the BIMCO Charter Party Editor.
Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA
approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

2

NYPE 93 Page
Case 3:12-cv-00602-JJB-SCR   Document 1-1   09/25/12   Page 3 of 14

| | |
|---|---|
| 85 | agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory |
| 86 | garbage disposal), all communication expenses pertaining to the Charterers' business at cost, **compulsory** pilotages, |
| 87 | towages, agencies, commissions, consular charges (except those pertaining to individual crew members |
| 88 | or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel |
| 89 | puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all |
| 90 | such charges incurred shall be paid by the Owners. Fumigation ordered because of illness of the crew |
| 91 | shall be for the Owners' account. Fumigation ordered because of cargoes carried or ports visited while |
| 92 | the Vessel is employed under this Charter Party shall be for the Charterers' account All other fumigation |
| 93 | shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six |
| 94 | months or more. |
| 95 | The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a |
| 96 | special trade or unusual cargo, but the Owners shall allow them the use of any dunnage */ lashing materials* already aboard |
| 97 | the Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in |
| 98 | their time. |
| 99 | 8. **Performance of Voyages** |
| 100 | (a) The Master shall perform the voyages with due despatch, and shall render all customary assistance |
| 101 | with the Vessel's crew. The Master shall be conversant with the English language and (although |
| 102 | appointed by the Owners) shall be under the orders and directions of the Charterers as regards |
| 103 | employment and agency; and the Charterers shall perform all cargo handling, including but not limited to |
| 104 | loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk |
| 105 | and expense, under the supervision of the Master. |
| 106 | (b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or |
| 107 | officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and. If |
| 108 | necessary, make a change in the appointments. |
| 109 | 9. **Bunkers** *See Clause 63* |
| 110 | (a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and |
| 111 | diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with |
| 112 | long*/metric* tons of fuel oil at the price of per ton; |
| 113 | tons of diesel oil at the price of per ton. The vessel shall |
| 114 | be redelivered with: tons of fuel oil at the price of per ton; |
| 115 | tons of diesel oil at the price of per ton. |
| 116 | *\* Same tons apply throughout this clause.* |
| 117 | (b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines |
| 118 | and auxiliaries and which conform to the specification(s) as set out in Appendix A. |
| 119 | The Owners reserve their right to make a claim against the Charterers for any damage to the main engines |
| 120 | or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed |
| 121 | specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed |
| 122 | specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners |
| 123 | shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker |
| 124 | consumption, nor for any time lost and any other consequences. |
| 125 | 10. **Rate of Hire/Redelivery Areas and Notices** |
| 126 | The Charterers shall pay for the use and hire of the said Vessel at the rate of $ ***per day including overtime*** |
| 127 | U,S. currency, daily, or $ U.S. currency per ton on the Vessel's total deadweight |
| 128 | carrying capacity, including bunkers and stores, on summer freeboard, per 30 days, |
| 129 | commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part |
| 130 | of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition, |
| 131 | ordinary wear and tear excepted, to the Owners (unless Vessel lost) at ***on dropping last outward sea pilot*** |
| 132 | ***1 port West Coast India, any time day or night Sundays and Holidays included*** |
| 133 | |
| 134 | unless otherwise mutually agreed. |
| 135 | The Charterers shall give the Owners not less than ***10/7/3/2/1*** days notice of the Vessel's |
| 136 | expected date and probable port of redelivery. |
| 137 | For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be |
| 138 | adjusted to GMT. |

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

11. **Hire Payment**

(a) *Payment*

Payment of Hire shall be made so as to be received by the Owners or their designated payee in viz

in ~~currency~~, or in United States Currency, in funds available to the Owners on the due date, **every** 15 days in advance, and for the last month or part of same the approximate amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire, or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers.

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account.

(b) *Grace Period*

Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners **3(three)** ear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those **3(three)**) days following the Owners' notice, the payment shall stand as regular and punctual.

Failure by the Charterers to pay the hire within **3(three)** days of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.

(c) *Last Hire Payment*

Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be refunded by the Owners or paid by the Charterers, as the case may be.

(d) *Cash Advances*
Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required by the Owners, subject to 2 1/2 percent commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

12. **Berths**

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat at any time of tide.

13. **Spaces Available**

(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle, apparel, furniture, provisions, stores and fuel.

(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

191  14. **Supercargo and Meals**

192  The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers'
193  risk and see that voyages are performed with due despatch. He is to be furnished with free
194  accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of
195  ***US$8.00*** per day. The Owners shall victual pilots and customs officers, and also, when
196  authorised by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,
197  Charterers paying at the rate of                   per meal for all such victualling.

198  15. **Sailing Orders and Logs**

199  The Charterers shall furnish the Master from time to time with all requisite instructions and sailing
200  directions, in writing, in the English language, and the Master shall keep full and correct deck and engine
201  logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the
202  Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,
203  showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts
204  required by the Charterers shall be in the English language.

205  16. **Delivery/Cancelling**

206  If required by the Charterers, time shall not commence before       ***, 2000***        and should the
207  Vessel not be ready for delivery on or before            ***, 2000***  but not later than   ***24***   hours,
208  the Charterers shall have the option of cancelling this Charter Party.

209  *Extension of Cancelling*

210  If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready
211  for delivery by the cancelling date, and provided the Owners are able to state with reasonable certainty
212  the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is
213  expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will
214  cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two
215  days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date
216  of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the
217  Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in
218  accordance with this Clause.

219  17. **Off Hire**

220  In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency
221  of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the
222  arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,
223  agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless
224  resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or
225  painting bottom,or by any other similar cause ***whatsoever*** preventing the full working of the Vessel,the payment of
226  hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back
227  during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident
228  to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time
229  of her deviating or putting back until she is again in the same or equidistant position from the destination
230  and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'
231  account. In the event of the Vessel being driven into port or to anchorage through stress of weather,
232  trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses
233  resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be
234  reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and
235  the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be
236  deducted from the hire.

237  18. **Sublet**

238  Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of
239  The time covered by this Charter Party, but the Charterers remain responsible for the fulfilment of this
240  Charter Party.

241  19. **Drydocking**

242  The Vessel was last drydocked

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor.
Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA
approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

243 *(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter
244 at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for
245 bottom cleaning and painting and/or repair as required by class or dictated by circumstances.

246 *(b) Except in case of emergency no drydocking shall take place during the currency of this Charter
247 Party.

248 * Delete as appropriate

249 20. **Total Loss**

250 Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or
251 being last heard of) shall be returned to the Charterers at once.

252 21. **Exceptions**

253 The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the
254 seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always
255 mutually excepted.

259 23. **Liens**

260 The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due
261 under this Charter Party, including general average contributions, and the Charterers shall have a lien on
262 the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be
263 returned at once.

264 The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance,
265 which might have priority over the ""title and interest of the Owners in the Vessel. The Charterers
266 undertake that during the period of this Charter Party, they will not procure any supplies or necessaries
267 or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.

268 24. **Salvage**

269 All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting
270 Owners' and Charterers' expenses and crew's proportion.

271 25. **General Average**

272 General average shall be adjusted according to York-Antwerp Rules 1974. as amended 1990, or any
273 subsequent modification thereof, in *London* and settled in *US Dollars*
274 currency.

275 The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will
276 contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules
277 1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason
278 Clause" as per Clause 31.

279 Time charter hire shall not contribute to general average.

280 26. **Navigation**

281 Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners
282 shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew,
283 and all other matters, same as when trading for their own account.

284 27. **Cargo Claims**

285 ~~Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club~~
286 ~~New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent~~
287 ~~modification or replacement thereof.~~

288 28. **Cargo Gear and Lights**

289 The Owners shall maintain the cargo handling gear of the Vessel which is as follows : ***See vessel description***

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

*Clause 89*

providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also provide on the Vessel for night work lights as on board, but all additional lights over those on board shall be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which case the Vessel shall remain on hire.

29. **Crew Overtime**

In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents, the Charterers shall pay the Owners, concurrently with the hire ***Nil*** per month or pro rata. **Cable / victualinq / representation US$1,000 per month pro rata.**

30. **Bills of Lading**

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts.

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master at their request.

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for any loss, damage, expense or delay howsoever caused."

*Vessel is responsible for number of pieces.*

31. **Protective Clauses**

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT
This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further."

and

(b) BOTH-TO-BLAME COLLISION CLAUSE
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

and

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

(c) NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.
If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."

and

(d) U.S. TRADE - DRUG CLAUSE

"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the Vessel.
Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account and the Vessel shall remain on hire.

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their expense put up the bails to secure release of the Vessel.
The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the Vessel's personnel."

and

(e) WAR CLAUSES

"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war. warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organisation maintaining naval, military or air forces).

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of **US$2,500,000** . In addition, the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, the Vessel shall not be required to enter or remain at any such port or zone.

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.

~~(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the Charterers' account."~~

32. **War Cancellation**

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries:



either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after discharge thereof at destination, or. if debarred under this Clause from reaching or entering it, at a near

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.

33. **Ice**

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging. Subject to the Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her, 409 construction and ice class.

34. **Requisition**

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by the Owners. The period during which the Vessel is on requisition to the said government shall count as part of the period provided for in this Charter Party.
If the period of requisition exceeds ***about 2 (two)*** months, either party shall have the option of cancelling this Charter Party and no consequential claim may be made by either party.

35. **Stevedore Damage**

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than ~~48~~ **24** hours after any damage is ~~discovered~~ ***declared***. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.

(b) ~~Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.~~ ***For any and all damage(s) not described under point {a} above, a mutually acceptable independent surveyor to be appointed ( cost to be shared 50 / 50 ) to ascertain cost of repairing damage(s).***
***Charterers (at their option) are to repair same before redelivery or pay cost of repairing as per surveyor findings with final hire statement But Owners are always doing the best to settle the stevedore damage directly with stevedoring company.***

36. **Cleaning of Holds**

~~The Charterers shall provide and pay extra for swooping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations, at the rate of                    par hold.~~

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver the Vessel with unclean/upswept holds against a lumpsum payment ***to Owners*** of ***US$1,000*** in lieu of cleaning***, lashing/dunnage materials***.

37. *Taxes*

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners).

38. **Charterers' Colors**

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S.A ). Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers shall be for the Charterers' account.

## 39. Laid up Returns

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or pro rata for the time actually on hire.

## 40. Documentation

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial responsibility for oil pollution **or equivalent if required by local authorities**, provided such oil pollution certificates are obtainable from the Owners'
P & I. club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.

## 41. Stowaways

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers snipped by the Charterers.

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and a!! expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

## 42. Smuggling

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.

## 43. Commissions

A commission of **1.25** percent is payable by the Vessel and the Owners to **LIMITED, London and similarly a likewise commission of 1.25% to ., Piraeus**

on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

## 44. Address Commission

An address commission of **2.5** percent is payable to **RMS LTD, Republic of Seychelles**

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ) Inc., using the BIMCO Charter Party Editor. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document

495
496                                      on hire earned and paid under this Charter.

497  45. **Arbitration**

498  (a)  NEW YORK
499  ~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and~~
500  ~~subject to U.S. Law:~~

501  ~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two co chosen. Their~~
502  ~~decision or that of any two of them shall be final, and for the purpose of enforcing any award, this~~
503  ~~agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with~~
504  ~~chipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of~~
505  ~~Maritime Arbitrators Inc.~~

506  ~~For disputes where the total amount claimed by either party does not exceed US $                              **~~
507  ~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~
508  ~~of Maritime Arbitrators Inc.~~

509  (b)  LONDON
510  All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree
511  forthwith on a single Arbitrator, be referred to the final arbitration of two Arbitrators carrying on business
512  in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping,
513  one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No
514  award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as
515  above, unless objection to his action be taken before the award is made. Any dispute arising hereunder
516  shall be governed by English Law.

517  For disputes where the total amount claimed by either party does not exceed US $ **50,000**              **
518  the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime
519  Arbitrators Association.

520  *  Delete para (a) or (b) as appropriate

521  ** Where no figure is supplied in the blank space this provision only shall be void but the other provisions
522  of this clause shall have full force and remain in effect.

523  If mutually agreed, clauses          **46**       to        **89**        , both inclusive, as attached hereto are fully
524  incorporated in this Charter Party.

525                                      **APPENDIX "A"**

526  To Charter Party dated            **, 2000**
527  Between                                                                                                Owners
528  and  **Eko   Shipping   Ltd,   BVI**                                                                Charterers
529
530  Further details of the Vessel :  **See Clause 89**

This Charter Party is a computer generated copy of the NYPE 93 form, printed under license from the Association of Brokers & Agents (U.S A ). Inc., using the BIMCO Charter Party Editor.
Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original ASBA
approved document shall apply. ASBA/BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original ASBA document and this document
NYPE 93 Page 11

```
Thor Spirit - Final recap + charter party pro-forma
```

**"Thorco Shipping - Europe "**
<europe@thorcoshipping.com>

24.04.11 11:10

To <kaalbye@tn.odessa.ua>
cc "Thorco Shipping - Europe" <europe@thorcoshipping.com>, "Thorco Operation" <operation@thorcoshipping.com>
Subject Thor Spirit - Final recap

Sergey / Timo

Good morning,

With regards to our booking on Friday please find hereunder the final recap:

-acct: Knit Shipping
- Thorco Shipping as disponent owner for
- M/V Thor Spirit
-chopt to load imo classed cargoes in accordance with imo rules/regulations including cargo of military origin but always in accordance with ships certificates.
- owners confirm that imo 1 class can be loaded under deck except IMO 1.1-1.6. as per dangerous goods certificate
-1 tct with gens cargoes / trucks / vehicles incl. catterpillars via safe ports/berths always with INL but including Venezuela
-delivery aps black sea atdnshinc – most likely Yuzhny
-redelivery dlosp 1 sp belem - boston rge including carribs/ncsa/usg atdnshinc
-Duration of this charter abt 25/30 days, wog
-l/c 25/27 april
-bb usd 25,000
-hire usd 8000 daily
-ilohc usd 1500 including dunnage /debris removal
-c/v/e usd 800 pmpr
- ncsa chrts do not pay for bunker costs on delivery.
  but before redelivery chrts to replenish bunker consumed during this time charter trip and redeliver the vessel with abt same quantity as was delivered.
  minor difference in bunker quantity, if any to settled on prices usd 690 pmt for ifo 380 and usd 1050 for mgo.
-in case original bs/l are not available at discharging ports cargo to be released to receivers against chrts loi signed by the chrts only
-owners confirmed that ship's ramp is suitable/ fully operational for loading of catterpillar vehicles with uw 55 mt
- speed/consumption warranty basis wind beufort 3/ sea douglas scale 3
- ownrs confirm that owners will provide copy of valid h+m certicate with h+m value before delivery otherwise charterers have the right to cancel this c/p w/out any mutual claims whatsoever
- questionnaire stated under this recap to be part of this booking
-otherwise as per c/p mv beluga navigation / eko dd 12.04.2011
-2.5 pct ttl comms here
end
QUESTIONAIRE:

a) loa/beam/depth moulded

&gt; 115.6 / 19.20 / 12.80
b) owns, disp owners, managers full style/back ground/owned tnge
   list, last 5 cargoes/chrts
   &gt; K/S Dania Spirit, Dania Marine Aps,Daniavej 15 - DK-9950 Mariager- Denmark / Military trucks, Pleasure Yatch / Stellar     Frieght Ltd.
c) dims of holds / tweens
   &gt; See Attach
d) own confirm vsl's speed and cons asf:
   &gt; 12.0knts normal weather / 14mts max. HFO / day

e) port consumtion bss idle/working 8 hrs/24 hrs respectively
   &gt; MGO 3mts / 24hrs
g) tpi/tpc , tt and h/covers uniform strength
   &gt; 18.3 / 2mts /sq meter
h) call sign/inmarsat no.
   &gt; 9HOM9 /  Tel: 00870761146889 Fax: 00870761146891
i) owns p+i club/h+m underwriters/h and m value/owners' p+i club and h+m underwriters to confirm directly to chrts chrts on fax 380-482-345412 that all premiums are paid and vessel to remain covered during intended voyage /
   &gt; Noted
j) last and next dd/ss date
   &gt; 19 Oct.2010
k) ex name if any
   &gt; Ariana, Beluga Spirit, BBC Egypt
l) name of the master / natioanlity of master and crew
   &gt; Roland L. Mecate / Filpino (full )
m) date and place of last port control inspection and
   deficiencies/remarks stipulated thereby
   &gt; 28 March 2011 , Wilmington North Carolina, USA / NIL n/ pollution incidents, grounding, collisions, GA within last
   24 months (place, date and details)
   &gt; No Record
l) owner confirmed that certificate of registry will be renewed within time as same expires on the 14th of may
k) sluge removal for owners account
END

Many thanks.

Best regards

**THORCO SHIPPING GERMANY**
**Timo Bothmann**
**Chartering**