UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| KNIT SHIPPING LTD. | § | |
|---|---|---|
| | § | CIVIL ACTION |
| **Plaintiff** | § | NO. 12-00602-JJB-SCR |
| | § | |
| versus | § | SECTION |
| | § | |
| THORCO SHIPPING A/S | § | MAG NO. |
| | § | |
| **Defendant** | § | ADMIRALTY RULE 9(H) |
| | § | |

## AMENDED VERIFIED COMPLAINT

The original Verified Complaint of KNIT SHIPPING LTD. (hereinafter referred to as "KNIT"), against THORCO SHIPPING A/S (hereinafter referred to as "THORCO"), respectfully represents:

## PARTIES AND JURISDICTION

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the action falls within the Court's subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1333. Subject matter jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 USC § 201 *et seq.* and/or the Federal Arbitration Act, 9 USC § 1 *et seq.*

2.  At all material times, plaintiff KNIT was and still is a corporation organized and existing under the laws of a foreign country, with an office and place of business in the British Virgin Islands, and was at all relevant times the charterer of the M/V THOR SPIRIT (the "Vessel").

3. Upon information and belief, at all material times, defendant THORCO was and still is a corporation organized and existing under the laws of a foreign country, with an office and place of business in Denmark, and was the disponent owner of the Vessel.

## FIRST CAUSE OF ACTION

4. Plaintiff KNIT repeats and re-alleges the allegations contained in paragraphs 1 through 3 of the Verified Complaint as if set forth separately herein.

5. By a charter party on an amended NYPE 1993 form as evidenced by a final recap dated April 24, 2011 (the "Charter Party"), defendant THORCO agreed to let, and plaintiff KNIT agreed to hire, the Vessel for one time charter trip from the Black Sea to Venezuela. (A copy of the Charter Party is annexed hereto as Exhibit A.)

6. The Vessel was a dry cargo, multipurpose, heavy lift vessel built in 1988, LOA 115.16 meters, GRT 7,876 and classed with Bureau Veritas and registered in Valletta, Malta.

7. Under the Charter Party, the Vessel was required to be tight, staunch, strong and in every way fitted for ordinary cargo service on delivery, and throughout the period of hire, until redelivery.

8. However, during the performance of the Charter Party, and after the Vessel had loaded a cargo of military vehicles, caterpillars and general cargo for discharge at Porto Cabello, Venezuela (the "Cargo"), the Vessel suffered starboard main engine failure and/or starboard Controllable Pitch Propeller ("CPP") failure.

9. As a result of these mechanical failures, the Vessel was unable to proceed to the discharge port and was instead diverted to Malta by defendant THORCO for repairs.

10. Therefore, the Vessel was not in her contractual condition on delivery or throughout the period of the Charter Party, and defendant THORCO was in breach of the Charter

Party.

11. As a result of defendant THORCO's failure to provide a seaworthy ship or, as the case may be, to exercise due diligence to make the Vessel seaworthy, and/or its breach of the Charter Party, the voyage was terminated at Malta and the cargo was transshipped on board a substitute vessel, the M/V MEDCOA LOME.

12. The failure of the starboard main engine, the consequent diversion to Malta, the inability to repair, and the transshipment of the Cargo and the resulting loss and damage were caused wholly by defendant THORCO's breach of contract and/or duty in that the Vessel was not seaworthy on delivery, nor maintained as such throughout the period of the Charter Party and/or defendant THORCO failed to exercise due diligence to make the Vessel seaworthy before and at the beginning of the voyage.

13. Under the substitute charter party, freight of $950,000.00 was paid and waiting time charges of $36,000.00 were incurred.

14. The costs of hire and bunkers of performing the voyage on the Vessel would only have been approximately $300,220.00 (calculated as hire of $136,000.00 representing 17 days of sailing and discharge time at the hire rate of $8,000.00 per day, plus estimated bunker costs of $164,220.00 representing 14 metric tons of IFO consumed per day at a cost of $690.00 per metric ton for 17 days).

15. Thus, the net additional freight and other charges incurred by plaintiff KNIT as a result of the inability to complete the voyage under the Charter Party is $685,780.00.

16. Upon redelivery of the Vessel to defendant THORCO at Malta (after completion of discharge of the Cargo), the sum of $258,225.82 was due to plaintiff KNIT under the Charter Party. However, wrongfully, and in breach of the Charter Party, defendant THORCO only paid

- 3 -

plaintiff KNIT the sum of $137,098.85, as a result of which the sum of $121,126.97 remains due and owing to plaintiff KNIT.

17. Moreover, plaintiff KNIT incurred additional costs, expenses, and charges relating to the transshipment of the Cargo in the sum of $289,338.75.

18. The delivery of the Cargo was also delayed by 20 days, as a result of which plaintiff KNIT was liable to pay compensation of $30,000.00 per day to the sub-charterer of the Vessel in accordance with the terms of the sub-charter party, for a total liability of $600,000.00.

19. Thus, plaintiff KNIT has incurred total damages of approximately $1,696,245.72, exclusive of interests and costs, as nearly as now can be calculated.

## ARBITRATION, INTEREST, AND COSTS

20. Pursuant to the Charter Party disputes between plaintiff KNIT and defendant THORCO are subject to English law and London arbitration.

21. Plaintiff KNIT has commenced arbitration proceedings against defendant THORCO with respect to the disputes concerning the Charter Party and those arbitration proceedings remain active.

22. Therefore, this action is in aid of arbitration in accordance with 9 USC § 8.

23. Under English law, plaintiff would expect a London arbitration tribunal to award interest on the principal amount awarded at a rate of approximately 4.5% per annum. Plaintiff has therefore calculated interest on the sums set forth in paragraph ¶ 29 of the Verified Complaint herein based on that interest rate.

24. Under English law, plaintiff would also expect a London arbitration tribunal to award the legal costs of arbitration against defendant. These legal costs would include plaintiff's English solicitors' legal fees, experts' fees, barristers' fees in relation to the arbitration hearing,

costs associated with the arbitration hearing itself, and travel costs and expenses for witnesses attending the hearing.

25. The defendant has no office or principal place of business in this jurisdiction, no agent for service of process, and cannot be found within this Judicial District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but upon information and belief, defendant has, or will have during the pendency of this action, property within this Judicial District and subject to the jurisdiction of this Court.

26. Upon information and belief, the defendant THORCO is the charterer of the M/V THOR GLORY, which is presently located in this Judicial District.

27. By virtue of the charter of the M/V THOR GLORY, defendant THORCO possesses a charterer's interest in that vessel, which constitutes attachable property under Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  (See the Affidavit of John H. Musser, V in Support at ¶¶ 5 to 26).

28. Additionally, defendant THORCO possesses property in this Judicial District in the form of the bunkers (fuel) contained aboard the M/V THOR GLORY, which are the property of defendant THORCO pursuant to the terms of the relevant charter party for that vessel.

29. Plaintiff hereby demands:

    (a) Payment of $685,780.00 as security for the net additional freight and other charges incurred by plaintiff KNIT as a result of the inability to complete the voyage under the Charter Party;

    (b) Payment of $121,126.97 as security for the past due payments due and owing to plaintiff KNIT under the Charter Party;

(c) Payment of $289,338.75 as security for the additional costs, expenses, and charges relating to the transshipment of the Cargo incurred by plaintiff KNIT;

(d) Payment of $600,000.00 in delay damages for which plaintiff was liable to its sub-charterer;

(e) Payment of $158,810.35 as security to cover estimated interest on the amounts in paragraphs (a) through (d) above as recoverable under English law. Plaintiff reserves the right to amend the demand herein in the event the amounts in paragraphs (a) through (d) above increase over time; and

(f) Payment of $400,000.00 as security to cover the estimated legal costs which have been incurred or will be incurred in connection with the London arbitration as recoverable under English law. Plaintiff reserves the right to amend the demand in the event the legal costs increase over time.

**TOTAL: $2,255,056.07**

WHEREFORE, plaintiff prays that:

a. process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against defendant citing it to appear and answer under oath all and singular the matters alleged;

b. since defendant cannot be found within this Judicial District, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the United States Arbitration Act, 9 USC §§ 1, 8 and 9,

attaching all of the defendant's tangible or intangible property in this Judicial District, including the M/V THOR GLORY, defendant's interest in that vessel as a charterer, as well as the bunkers (fuel) carried aboard the M/V THOR GLORY in which defendant maintains a property interest, up to the amount of $2,255,056.07 to secure plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

    c.    this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary;

    d.    in the alternative, pursuant to Rule 64 of the Federal Rules of Civil Procedure, that at the commencement and during the course of this action, plaintiff be permitted to avail themselves of all remedies providing for seizure of property for the purpose of securing satisfaction of the judgment ultimately to be entered in this action, as available under the circumstances and in the manner provided by the laws of the State of Louisiana;

    e..    judgment be entered by this Court in favor of plaintiff and against defendant enforcing and recognizing any London arbitration award(s) or judgment(s) that may be rendered on the claims set forth herein; and

    f.    plaintiff have such other, further, and different relief as this Court may deem just and proper.

Respectfully submitted,

MURPHY, ROGERS, SLOSS & GAMBEL

/s/ *John H. Musser, V*

E. Carroll Rogers, T.A. #11421
crogers@mrsnola.com
John H. Musser, V #22545
jmusser@mrsnola.com
Timothy D. DePaula #31699
tdepaula@mrsnola.com
Suite 400, One Shell Square
701 Poydras Street
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Attorneys for KNIT SHIPPING LTD.

**INSTRUCTIONS FOR U.S. MARSHALL**

PLEASE SERVE:

The Master of the M/V THOR GLORY
Currently afloat in the Mississippi River
At Darrow Buoys, Darrow, Louisiana, Mile Marker 172